Welch, 0. J.
The act of March 29, 1856 (S. & C. 1098), gives to the judgments of justices of the peace, where transcripts are filed in court in vacation, a lien from the day of filing, “as against the judgment debtor” (and of course as against mortgagees claiming under him), but “as against . . . judgments rendered at the next term of court,” it gives a, lien to such transcript judgments only from the first day of the term. Here are two laws governing the rights of the parties. The one is the law of priority in time, and the other is the law of equality, irrespective of time. The law of priority is the law of the case as between the mortgagee and either or both the other parties, but the law of equality is the law of the case as between the transcript and the court judgments. It seems to me that it is the confounding of these two laws, and the application of them respectively to the wrong parties, that leads to any doubt or confusion as to the respective lights of the parties. This' statute plainly gives the transcripts a lien, as between them and every other claim except the court judgment, from the date of filing; and the law of mortgages as plainly declares that mortgages shall have effect from the date of their being filed for record. It is equally clear that this law of priority as between the transcript and the mortgage, and as between the court judgment and the mortgage, is in no way affected by the provision that the transcripts and the court judglnent, as between themselves, shall have equal lieus. That provision has its whole operation between the two parties. Its effect begins and ends with them, and the rights of all others are left as they would have stood if no suóh provision had ever been made. The whole effect of the provision is to compel each of these two parties, the owners of the judgments, to share pro rata with the other whatever either may acquire by priority over third persons. The provision that the transcript and court judgments, as between themselves, shall take effect from the first day of the term is simply a provision that they shall stand equal—that their liens shall take effect from the same day. The particular day is immaterial, provided it be the same day, because it *276 affects no one but themselves. The first clay of the term was named, because it was the day on which court judgments took effect without any such provision. The provision is the same as if the words had been, “but the-transcripts shall have no priority over court judgments.”
How, then, stand the parties here? The transcripts, as between them and the mortgage, fastened upon and secured $257 of this fund, subject, however, to a pro rata division with the subsequent court judgment. The mortgage came in next, and fastened upon what was left of the fond, leaving out the $257. The amount thus secured by the mortgage could not be changed by the court judgment, or any other subsequent lien. It became a fixed fact. If anything still remained, it was taken by the subsequent court judgment, but subject to a like pro rata division with the transcript judgments. In other words, the liens attached according to their priority in time, but whatever wms thus secured by either the transcripts or the court judgment, must be shared in common by both. This seems to be the principle adopted by the court below in marshaling the liens of the parties, and a majority of us are satisfied that it is the right principle. It carries into effect all the provisions of the statute, according to both their letter and their spirit. While, on the other hand, the principle contended for on behalf of the plaintiffs in error disregards the provisions of the statute, both by making the transcripts and the court judgments unequal in right, and also by giving the mortgage more than what was left of the fund at the date of the mortgage. It gives both the transcripts and the moi'tgage more than their due, and instead of 'making the owner of the court judgment equal with those of the transcripts, it gives him nothing.
That we may see more clearly wdiich of the two theories-■contended for is the true one, let us clear the case of fractions and uncertain amounts. This we should do, because the right principle in this case must be the right principle in every similar case, irrespective of the amount of the fund to be distributed, or the relative amounts of the several *277 claims. Suppose, then, that eacli of the three claims here was $1,000, and the fund for distribution only $1,000, how should the $1,000 be distributed? According to the rule adopted by the court below, the transcript judgments would get $500, the court judgment $500, and the mortgage nothing. According to the rule contended for here, and adopted by a minority of this court, the transcript judgments would get $500, the mortgage $500, and the court judgment nothing. The one rule gives the whole fund to'the transcripts and the court judgment, and the other gives the whole to the transcripts and the mortgage. Can any one hesitate to. say that the former is the true and just rule? The transcript lien, in the case supposed, attached and covered the whole fund before the mortgage was executed. There was nothing left for the mortgage to fasten upon. As between it and the transcripts, the latter took the whole fund, and had no court judgment been afterward obtained, it is conceded that they would have held the whole fund. But it is contended, on some principle of reasoning which I fail to comprehend, that the subsequent.rendition of the court judgment had the effect to take half of the fund from the transcripts and give it to the mortgage. That is to say, the recovery of the court judgment works no benefit to its owner, and only inures to the advantage of the intervening mortgage, which, without the judgment, would have been worthless. In other words, a mortgage, worthless while only one lien subsists against the property, is rendered good by a second lien, and that, too, where there is a privity and community of right between the holder of the first and the second. The owner of the second or subsequent lien is made thus to act against the interest of his quasi-partner by taking from him part of what he had already secured and giving it to a stranger. I can well understand why the owners of the transcripts should be affected by the recovery of'the court judgment, and made to contribute to the latter. There is a privity or equality of right subsisting between them, equally as there is between the several owners of the transcripts themselves. They are all in the same. *278 category. But the mortgagee is to all of them a stranger, standing upon his own independent rights, and unaffected by any relations between them. I utterly fail to see why the subsequent recovery of a court judgment should affect him, either for better or for worse, but especially why it should affect him for the better. The principle contended for makes the court judgment a pure godsend to the mortgagee; without it, in the case supposed, he would have got nothing. It virtually makes the mortgagee- claim his rights under or through the court judgment, whereas, in our judgment, the statute- clearly creates a community of rights between the owners of the several judgments, and as clearly leaves the rights of the intervening mortgagee unaffected by the subsequent judgment. The statute says to the owner of the transcript, “ your lien attaches, for the full amount of your claim—no more, no less—from the date of tiling, but subject to the risk that a subsequent court judgment may participate with you;” and it says to the mortgagee, “ your lien attaches from its date, and takes what is left to the amount of your claim, and your rights can not be affected by any subsequent lien.” The objection made to the plan of division adopted by the court below is, that it gives the court judgment priority of right over the mortgage. It does no such'thing. There was nothing left as a subject of competition between the court judgment and the mortgage. The transcripts had taken it all. Had the fund been larger, had it been, say $1,100, instead of $1,000, so that $100 had been left unabsorbed by the transcripts, that $100 would have-been a subject of competition between the court judgment and the.mortgage, and the mortgage, and not the court judgment, would have taken it. As to what had been already taken by the transcripts, the court judgment and mortgage are not brought into conflict at all. What the court judgment gets, it gets from the transcripts, and not by competition with the mortgage. What difference does it make to the mortgagee -whether the owner of the transcripts keeps the whole amount secured by his lien, or whether he divides it with the owner of the court judg *279 ment ? The mortgagee has no interest in it, and it is none of his business what becomes of it, or how it is divided.
I am aware that this holding is apparently in conflict with the rule laid down in Choteau v. Thompson, 2 Ohio St. 115. There, as is claimed to be the ease here, two of three several parties were held to be equal in right, while a third was held to be superior to one of them and inferior to the other. But the cases are unlike in their essential facts. The subject of the lien in that case was a building, to the erection of which two of the parties had themselves contributed—it was to a certain extent a thing of their own creation. It was only by construction that the lien which preceded and the lien which succeeded the mortgage were held to be equal in right. There were equitable reasons for giving the prior one of these liens the preference over the other. There was the absence of direct statutory provisions fixing the rights and relations of the parties, and the "court seem to have marshaled the liens upon an equitable rather than upon a legal basis. Without undertaking to say that the rule there adopted was not the right one for the case,'we are unwilling to extend it to cases like the present, -where the analogy is not perfect. Properly'speaking, it is not true, in either case, that two of three parties were equal, and the third was superior to one and inferior to the other. It can not be true in any case. The thing is morally and legally as well as mathematically impossible—just as impossible as an inclined level, a crooked straight line or a square circle. What we mean, when we say that a third person is superior to one and inferior to the other of two equals, is that he is superior to one of them in onerespect, and inferior to the other in a different respect. In the present ease, as to the $257, the judgment creditors are equal, and they are all superior to the mortgagee. As to so much of the remaining fund as is necessary to satisfy the mortgage, the mortgagee is superior to all the judgment creditors; and as to any remaining balance of the fund the judgment creditors are all equal, and all, of course, superior to the mortgagee. Nor do we think the cases of Brazee v. Bank, 14 Ohio, 318; Halliday *280 v. Franklin Bank, 16 Ohio, 533, should be regarded as authorities necessarily in conflict with the decision of the court below. The facts in those cases, as well as the statutory provisions on which they stand, are essentially different from those of the present ease. There was in those cases at least an apparent conflict or repugnancy between different statutory provisions, which rendered it difficult to apply them to the facts of the cases. No such conflict or difficulty exists in the present case. The court below adopted substantially the principle established in the case of Day et al. v. Munson et al., 14 Ohio St. 488; and we think it the correct principle. ■ Motion overruled.